IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

VICTOR CHARLES ZERBY,
Plaintiff,

vs. Case No.: 3:09cv75/LAC/EMT

FLORIDA DEPT. OF CORRECTIONS, et al.,
Defendants.
___________________________________/

**REPORT AND RECOMMENDATION**

This cause is before the court on Plaintiff's fourth amended civil rights complaint filed pursuant to 42 U.S.C. § 1983 (Doc. 29). Leave to proceed in forma pauperis has been granted.

Because Plaintiff is proceeding in forma pauperis, the court may dismiss the case if satisfied that the action is "(i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). A complaint is frivolous under section 1915(e) "where it lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325, 109 S. Ct. 1827, 1833, 104 L. Ed. 2d 338 (1989). Dismissals on this ground should only be ordered when the legal theories are "indisputably meritless," *id.*, 490 U.S. at 327, or when the claims rely on factual allegations that are "clearly baseless." Denton v. Hernandez, 504 U.S. 25, 31, 112 S. Ct. 1728, 1733, 118 L. Ed. 2d 340 (1992). Dismissals for failure to state a claim are governed by the same standard as Federal Rule of Civil Procedure 12(b)(6). Mitchell v. Farcass, 112 F.3d 1483, 1485 (11th Cir. 1997). The allegations of the complaint are taken as true and are construed in the light most favorable to Plaintiff. Davis v. Monroe County Bd. Of Educ., 120 F.3d 1390, 1393 (11th Cir. 1997). The complaint may be dismissed if the facts as pleaded do not state a claim to relief that is plausible on its face. *See* Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1968–69, 1974, 167 L. Ed. 2d 929 (2007) (retiring the often-criticized "no set of facts" language previously used to describe

the motion to dismiss standard and determining that because plaintiffs had "not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed" for failure to state a claim). Upon review of the complaint, the court concludes that dismissal of this action is warranted.

Plaintiff, an inmate at the Santa Rosa Correctional Institution (SRCI), names the following Defendants in this action: Nurse Williams, Dr. Neives, Dr. Pacheco, and unidentified persons employed by the Florida Department of Corrections (DOC) who administer policies and practices regarding the provision of medical care to inmates (Doc. 29 at 1–2). Plaintiff contends Defendants violated his Eighth Amendment rights by failing to treat his liver disease, Hepatitis C (*id.* at 5–17). Plaintiff states that in June of 2004, he was diagnosed with Hepatitis C (*id.* at 12). In August of 2007, upon his arrival at SRCI, he completed a written medical questionnaire and indicated that he had Hepatitis C (*id.* at 5). He additionally informed Nurse Williams of his condition and requested that he be placed in the "chronic care program" for Hepatitis C at the prison (*id.*). Nurse Williams responded that SRCI did not have a chronic care program for Hepatitis C (*id.*). Nurse Williams did not schedule a doctor's visit or any further treatment for Plaintiff's condition (*id.*). Plaintiff states his belief that "prejudice" motivated Nurse Williams's failure to respond to his medical condition (*id.* at 5, 9).

Plaintiff filed grievances regarding Nurse Williams's conduct, but his grievances were ignored (*id.* at 6). On December 30, 2007, the DOC was served with a complaint in a civil action filed by Plaintiff in state court concerning the DOC's failure to treat his Hepatitis C, thus notifying the DOC's legal counsel of Plaintiff's condition (*id.*).[1] Despite this notification, the DOC failed to provide Plaintiff the minimal treatment required by DOC policies and protocol, that is, monitoring of the disease through blood tests (*id.* at 6–7). Plaintiff further asserts that this policy of providing only monitoring in cases like his constitutes deliberate indifference because it essentially ignores a serious medical condition (*id.* at 7–8). Plaintiff also asserts his belief that the DOC's failure to provide treatment was motivated by prejudice and discrimination (*id.* at 7).

[1] Plaintiff states this state civil action was dismissed on July 22, 2008, on the ground that he failed to exhaust administrative remedies (*see* Doc. 29 at 2, 6). Plaintiff states he appealed the dismissals, but the appeals were unsuccessful (*id.* at 3, 6).

On August 21, 2008, Plaintiff requested an appointment with an institutional doctor (*id.* at 8). On that date, he met with Dr. Minor (who is not named as a Defendant in this case) complaining of joint pain, stomach pain, and fatigue which he (Plaintiff) associated with Hepatitis C (*id.*). Plaintiff asked Dr. Minor if the symptoms were related to his Hepatitis C, and Dr. Minor stated she was unaware that Plaintiff suffered from the disease (*id.*). Dr. Minor summoned Nurse Williams into the room and asked her why Plaintiff had not been previously scheduled for treatment (*id.*). Nurse Williams responded that she was not aware of Plaintiff's condition (*id.*). Plaintiff told Dr. Minor that he disclosed his condition both on the questionnaire and verbally to Nurse Williams one year prior (*id.* at 8–9). When Dr. Minor showed Nurse Williams the questionnaire, she responded, "We never look at those." (*id.* at 9). Dr. Minor then scheduled a blood test for Plaintiff and prescribed ibuprofen for Plaintiff's pain (*id.*).

Two weeks later, in September of 2008, Plaintiff met with Dr. Neives to review the results of his blood test, which confirmed that Plaintiff suffered from Hepatitis C (*id.*). When Plaintiff complained about joint pain, stomach pain, and fatigue, Dr. Neives told Plaintiff that he may be suffering from arthritis (*id.*). Plaintiff informed Dr. Neives that the ibuprofen was not working to relieve his pain, but Dr. Neives responded that she would not give him anything else (*id.* at 10). Plaintiff asked Dr. Neives when he could begin treatment for Hepatitis C, but Dr. Neives responded that the only treatment he would receive was another blood test (*id.* at 9–10). Plaintiff alleges Dr. Neives was aware that Plaintiff could have been suffering from Hepatitis C for a very long time because of Plaintiff's age (48 years old), his "considerable" weight loss since his incarceration, and his reporting symptoms associated with Hepatitis C, that is, stomach and joint pain and fatigue (*id.* at 10). Plaintiff reasserts his belief that the failure to provide more treatment than blood tests was motivated by prejudice (*id.*). One month later, on October 10, 2008, Plaintiff had an appointment with Dr. Pacheco to review the results of the blood test (*id.*). Plaintiff complained of joint and stomach pain and fatigue (*id.*). Dr. Pacheco reviewed Plaintiff's blood test results and examined Plaintiff's ears, lungs, heart, and feet (*id.*). In response to Plaintiff's complaint of stomach pain, Dr. Pacheco advised him to discontinue taking ibuprofen (*id.*). Plaintiff requested treatment of his liver condition with the drug Interferon, but Dr. Pacheco told Plaintiff that he was overreacting, and treatment with Interferon was not necessary (*id.* at 11). Dr. Pacheco scheduled another blood test

for Plaintiff (*id.*). Plaintiff states he believes Dr. Pacheco was merely following protocol instead of using his own medical judgment (*id.*).

The next month, in November of 2008, Plaintiff met with Dr. Pacheco to review the results of the blood test (*id.*). Dr. Pacheco informed Plaintiff that the tests indicated that Plaintiff's condition had worsened (*id.*). When Plaintiff again requested treatment with Interferon, Dr. Pacheco again responded that Plaintiff was overreacting, and he was "fine" (*id.*). Dr. Pacheco scheduled another blood test for Plaintiff in six (6) months (*id.*).

Plaintiff met with Dr. Pacheco in June of 2009 to review the results of the six-month blood test (*id.* at 14). Dr. Pacheco informed Plaintiff that he was "fine" and scheduled another blood test for Plaintiff in six (6) months.[2] Plaintiff against requested treatment in the form of medication, and Dr. Pacheco responded by directing Plaintiff to leave the examination room (*id.*).

Plaintiff alleges he filed more grievances concerning the failure to provide more treatment for his Hepatitis C, but the grievances were denied on the ground that his condition was "mild" (*id.* at 15).

Plaintiff claims that Defendants' failure to provide medical treatment for his Hepatitis C constitutes deliberate indifference to his medical condition (*id.* at 17). Plaintiff states he has experienced mental suffering as a result of Defendants' failure to provide treatment (*see id.* at 5–16). He additionally states he continues to suffer joint pain, stomach pain, and fatigue, which he associates with his liver condition (*id.*). As relief, he seeks punitive and nominal damages for pain and suffering he has endured due to the delay in medical treatment (*id.* at 17).

It is well settled that the government has a constitutional duty to provide minimally adequate medical care to prisoners. Harris v. Thigpen, 941 F.2d 1495, 1504 (11th Cir. 1991). Medical treatment violates the Eighth Amendment "only when it is 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'" *Id.* at 1505 (citing Rogers v. Evans, 792 F.2d 1052, 1058 (11th Cir. 1986)). Incidents of mere negligence or

[2]This fact was alleged in Plaintiff's third amended complaint (*see* Doc. 24 at 8, ¶ 15) but omitted in the instant complaint. Because Plaintiff declared under penalty of perjury that the facts included in his third amended complaint were true and correct (Doc. 24 at 11), and this fact is relevant to Plaintiff's Eighth Amendment claim against Dr. Pacheco, the undersigned includes this fact in its analysis.

malpractice do not rise to the level of constitutional violations. *Id.* (citing Estelle v. Gamble, 429 U.S. 97, 106, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976)).

Stating an Eighth Amendment claim of denial of adequate medical care requires satisfying both an objective and subjective component. Taylor v. Adams, 221 F.3d 1254, 1257 (11th Cir. 2000). First, there must be conduct by prison officials which, objectively speaking, is "sufficiently serious" to constitute a deprivation "'denying the minimal civilized measure of life's necessities.'" *Id.* (quoting Wilson v. Seiter, 501 U.S. 294, 298, 111 S. Ct. 2321, 115 L. Ed. 2d 271 (1991) (internal quotation omitted)). Second, the prison officials must possess a subjective intent to use the medical deprivation as a means of punishment. *Id.* (citations omitted).

Both the objective and subjective components encompass two subsidiary requirements. Taylor, 221 F.3d at 1258. As to the objective prong, an objectively serious deprivation requires showing an objectively "serious medical need." Estelle, 429 U.S. at 104. A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Hill v. DeKalb Regional Youth Detention Center, 40 F.3d 1176, 1186 (11th Cir. 1994), *abrogated on other grounds by* Hope v. Pelzer, 536 U.S. 730, 122 S. Ct. 2508, 153 L. Ed. 2d 666 (2002); *see* Farmer v. Brennan, 511 U.S. 825, 834, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994) (serious medical need is one that, if left unattended, "pos[es] a substantial risk of serious harm."). In addition, an objectively serious deprivation requires showing the response made by Defendants to that need was so deficient as to constitute "an unnecessary and wanton infliction of pain." Estelle, 429 U.S. at 105–06 (internal quotation marks omitted); *see* Taylor, 221 F.3d at 1257; *see also* Adams v. Poag, 61 F.3d 1537, 1543–44 (11th Cir. 1995).

To show the required subjective intent to punish, Plaintiff must demonstrate that Defendants acted with an attitude of "deliberate indifference." Estelle, 429 U.S. at 105. "Deliberate indifference has three components: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." Farrow v. West, 320 F.3d 1235, 1245–46 (11th Cir. 2003) (citing McElligott v. Foley, 182 F.3d 1248, 1255 (11th Cir. 1999) and Taylor, 221 F.3d at 1258 (stating that defendant must have subjective awareness of an "objectively

serious need" and that his response must constitute "an objectively insufficient response to that need")).

A complete denial of readily available treatment for a serious medical condition constitutes deliberate indifference. Harris v. Coweta County, 21 F.3d 388, 393 (11th Cir. 1994). However, where the inmate has received medical treatment, and the dispute is over the adequacy of that treatment, courts should be reluctant to question the accuracy or appropriateness of the medical judgments that were made. Harris, 941 F.2d at 1507 (quoting Waldrop v. Evans, 871 F.2d 1030, 1035 (11th Cir. 1989)). To do otherwise would be "to constitutionalize claims that sound in tort law." Hamm v. DeKalb County, 774 F.2d 1567, 1575 (11th Cir. 1985) (quotation omitted).

Additionally, it is well established that supervisory officials are not liable under section 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability. *See* Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003) (internal quotation marks and citations omitted). Supervisory liability may occur, however, either when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation. *Id.* (citation omitted). This connection may be established "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so, or when a supervisor's custom or policy 'result[s] in deliberate indifference to constitutional rights' or when facts support 'an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so.'" *Id.* (internal quotation marks and citations omitted); Wayne v. Jarvis, 197 F.3d 1098, 1105 (11th Cir. 1999).

Isolated incidents are generally insufficient to establish a supervisor's liability; indeed, the deprivations must be "'obvious, flagrant, rampant and of continued duration . . . .'" Gray ex rel. Alexander v. Bostic, 458 F.3d 1295, 1308 (11th Cir. 2006) (quoting Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999)). Furthermore, filing a grievance with a supervisory person does not alone make the supervisor liable for the allegedly violative conduct brought to light by the grievance, even if the grievance is denied. Wayne, 197 F.3d at 1106; Weaver v. Toombs, 756 F. Supp. 335, 337 (W.D. Mich. 1989); *see also* Bellamy v. Bradley, 729 F.2d 416, 421 (6th Cir. 1984). Knowledge imputed to the supervisor "must be so pervasive that the refusal to prevent harm rises

to the level of a custom or policy of depriving inmates of their constitutional rights." Tittle v. Jefferson County Com'n, 10 F.3d 1535, 1542 (11th Cir. 1994). The failure to act or implement policy must be in the face of repeated violations or other indicators signifying a strong likelihood that the situation will recur. *See* Harris v. City of Marion, 79 F.3d 56, 58-59 (7th Cir. 1996). Supervisors are generally entitled to rely on their subordinates to respond appropriately to situations absent clear or widespread evidence to the contrary. "The standard by which a supervisor is held liable in [his] individual capacity for the actions of a subordinate is extremely rigorous." Cottone, 326 F.3d at 1360 (internal quotation marks and citation omitted).

In the instant case, Plaintiff has failed to state an Eighth Amendment claim against the DOC or its health care administrators. Assuming the truth of Plaintiff's assertion that the DOC has a policy or protocol of providing only monitoring, through blood tests, of inmates with the degree of Hepatitis C with which Plaintiff suffers, Plaintiff has failed to allege facts showing that the policy poses a substantial risk of serious harm to him or other inmates, or that the DOC is deliberately indifferent to Plaintiff's diagnosis. Therefore, Plaintiff's Eighth Amendment claim against the DOC and unidentified health care administrators should be dismissed. *See* Hines v. Anderson, 547 F.3d 915, 921 (8th Cir. 2009) (no evidence of constitutional violation regarding failure to treat inmates' Hepatitis C where evidence showed that Department of Corrections had guidelines in place to determine whether treatment for Hepatitis C was necessary, and there was no evidence that use of guidelines resulted in harm to inmates or that Department was deliberately disregarding Hepatitis C diagnoses).

Additionally, the facts fail to state an Eighth Amendment claim against Dr. Neives or Dr. Pacheco because the facts fail to show that Dr. Neives or Dr. Pacheco subjectively knew that their continuing to monitor Plaintiff's condition instead of ordering additional treatment, such as treatment with Interferon, posed a substantial risk of serious harm to Plaintiff's health. Upon becoming aware of Plaintiff's condition, Dr. Neive and Dr. Pacheco immediately ordered monitoring of Plaintiff's condition through routine blood tests. Additionally, Dr. Pacheco's comments, after reviewing the results of Plaintiff's blood tests, that Plaintiff was "fine," and treatment with Interferon was unnecessary and an overreaction to Plaintiff's condition suggest that the blood tests revealed nothing to indicate that treatment beyond monitoring through blood tests was necessary or

that failure to provide more than monitoring created a risk of serious harm to Plaintiff's health. Furthermore, although Plaintiff alleges Dr. Neives and Dr. Pacheco were aware that Plaintiff could have been suffering from Hepatitis C for a very long time due to his age, "considerable" weight loss since his incarceration, and his reporting stomach and joint pain and fatigue, these facts do not suggest deliberate indifference on the part of Dr. Neives or Dr. Pacheco in light of the fact that the blood tests did not indicate to them that further treatment was warranted. Finally, Plaintiff's attempt to satisfy the objective component of the Eighth Amendment standard by suggesting that prejudice and discrimination motivated Dr. Neives and Dr. Pacheco's failure to provide more than monitoring of his condition is unavailing. Plaintiff alleges no facts to support this assertion; rather, he simply states discrimination must have motivated their conduct because there is no other logical reason for it. This conclusory allegation is insufficient to create a plausible inference of deliberate indifference. The facts as pleaded do not state a claim to relief that is plausible on its face; therefore, Plaintiff's Eighth Amendment claims against Dr. Neives and Dr. Pacheco should be dismissed.[3] *See* Salahuddin v. Goord, 467 F.3d 263, 282 (2d Cir. 2006) (defendant doctor's response to inmate's grievance concerning failure to order liver biopsy in response to plaintiff's Hepatitis C was direct evidence that doctor was not aware of substantial risk that postponing biopsy would cause serious harm, where doctor expressed his belief that because Hepatitis C leads to cirrhosis only over 20 to 30 years, plaintiff was in no immediate danger and there was no urgency for livery biopsy; therefore, plaintiff failed to state a constitutional violation); *see also* Hines, *supra*.

Plaintiff has also failed to state a claim against Nurse Williams. Plaintiff alleges Nurse Williams failed to schedule an appointment with a doctor upon Plaintiff's disclosing his condition on a medical questionnaire and requesting that he be placed in a "chronic care" program for Hepatitis C sufferers. However, the facts fail to suggest that Nurse Williams's conduct was more than mere negligence. The fact that Nurse Williams told Plaintiff that SRCI did not have a "chronic care" program for Hepatitis sufferers, and her admission that she never looked at his health

[3]To the extent Plaintiff asserts an independent Eighth Amendment claim based upon Dr. Pacheco's failure to prescribe a pain reliever to substitute for the ibuprofen he discontinued in November of 2008, in response to Plaintiff's complaints of stomach pain, Plaintiff has failed to allege facts suggesting that the stomach pain rose to the level of a serious medical need sufficient to satisfy the objective component of the Eighth Amendment standard. Therefore, this Eighth Amendment claim should be dismissed.

questionnaire, do not plausibly suggest that Nurse Williams was subjectively aware that her failure to schedule an appointment with a doctor posed a risk of serious harm to Plaintiff's health, or that her failure to schedule an appointment was deliberate. Furthermore, although Plaintiff asserts the same allegations of prejudice and discrimination by Nurse Williams as he suggested of Dr. Neives and Dr. Pacheco, Plaintiff again alleges no facts to support his assertion of discriminatory motive. Instead, he simply states discrimination must have motivated Nurse Williams's inaction because there is no other logical reason for it. As with Plaintiff's allegations against the other Defendants, this conclusory allegation is insufficient to create a plausible inference of deliberate conduct by Nurse Williams. Therefore, Plaintiff's Eighth Amendment claim against Nurse Williams should also be dismissed.

Accordingly, it is respectfully **RECOMMENDED**:

1. That this cause be **DISMISSED** for failure to state a claim on which relief may be granted, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

2. That judgment be entered accordingly.

At Pensacola, Florida, this 9th day of September 2009.

/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**

**NOTICE TO THE PARTIES**

**Objections to these proposed findings and recommendations may be filed within ten (10) days after being served a copy thereof. Any different deadline that may appear on the electronic docket is for the court's internal use only. A copy of objections shall be served upon the magistrate judge and all other parties. Failure to object may limit the scope of appellate review of factual findings. *See* 28 U.S.C. § 636; United States v. Roberts, 858 F.2d 698, 701 (11th Cir. 1988).**